IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HALOSIL INTERNATIONAL, INC. and SANOSIL INTERNATIONAL, LLC,<br><br>                              Plaintiffs;<br><br>            v.<br><br>ECO-EVOLUTIONS, INC., ECO-EVOLUTIONS, LLC, PATHOGEND, LLC, FRANCES M. GRINSTEAD, STEVEN T. GRINSTEAD *d/b/a* CURIS BIO-DECONTAMINATION SYSTEM and MCG MANUFACTURING LLC *d/b/a* CURIS SYSTEM,<br><br>                              Defendants. | Civil Action No. 18-1375-RGA |

MEMORANDUM OPINION

Stephen B. Brauerman, BAYARD P.A., Wilmington, DE; Kent E. Baldauf, Jr. and Barry J. Coyne (argued), THE WEBB LAW FIRM, Pittsburgh, PA;

        Attorneys for Plaintiffs

Michael F. Duggan and Marc Sposato, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, DE; Stephen H. Luther and Ryan T. Santurri (argued), ALLEN, DYER, DOPPELT & GILCHRIST, PA, Orlando, FL;

        Attorneys for Defendants

July 14, 2020

1

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

This is a dispute between two companies that sell disinfectant fogging devices. Halosil International, Inc. sued Eco-Evolutions, Inc. for breach of contract and false advertising. (D.I. 30). Both parties have moved for summary judgment. (D.I. 74, 77, 81). I have considered the briefing (D.I. 75, 96, 107; D.I. 78, 95, 109; D.I. 82, 94, 108), and I heard oral argument on June 3, 2020. Defendants' motion (D.I. 74) is granted because the breach of contract claim is time-barred and because no reasonably jury could conclude Defendants' advertisements were literally false. Plaintiffs' motions (D.I. 77, 81) are denied.

## I.      BACKGROUND

Steven Grinstead and Frances Grinstead, a married couple, founded Eco-Evolutions in 2013. (D.I. 83-1 at 3). Halosil, which was named Sanosil International Inc. until 2015, is also led by a husband-and-wife team: David St. Clair and Maryalice St. Clair. (D.I. 75-6, Ex. 34). In January 2014, Eco-Evolutions and Sanosil signed a contract (D.I. 1-1, Ex. A, "Reseller Agreement" or "Agreement"), which allowed Eco-Evolutions to purchase and resell Sanosil's disinfectant solution and Sanosil's HaloFoggers—portable devices that release solution into the air to disinfect operating rooms, laboratories, hospices, and other facilities. (D.I. 84-1 at 5-6).

Section 17G of the Reseller Agreement provides that Sanosil is the "sole and exclusive owner of all rights," including patents rights, "to the Developments." The section defines the "Developments" as "any and all inventions, concepts, processes, methodologies, discoveries, improvements and other creative works, conceived or made by Reseller either solely or jointly with others during the period of this Agreement and related to the manufacture, formulation or

1

use of silver/peroxide disinfectants or improvements to the Sanosil HaloFogger." Additionally, the provision requires Eco-Evolutions to "disclose promptly" the Developments to Sanosil.

On February 13, 2015, Steven Grinstead filed a provisional application to patent a disinfectant fogging device. (D.I. 80-10, Ex. 10). The Patent and Trademark Office issued the patent on August 1, 2017 as U.S. Patent No. 9,717,810. (D.I. 80-9, Ex. 9). Grinstead calls his invention the "Curis" fogger.

Throughout 2015, Sanosil and Eco-Evolutions exchanged emails discussing the development of the Curis fogger. On February 8, 2015, Frances Grinstead mentioned a "new remediation fogger" that would be effective for mold control. (D.I. 75-6, Ex. F-11). She said (incorrectly at that point) that the device had been patented, and she suggested it could be available for sale by the summer. (*Id.*). In May 2015, Maryalice St. Clair asked to test one of the new foggers, explaining, "Our thought is that we'd like to resell it for you if we can make some margin there." (*Id.*, Ex. F-15). David St. Clair expressed further interest in reselling the fogger in June 2015. (*Id.*, Ex. F-20).

Sanosil received a Curis fogger for testing in July 2015. (*Id.*, Ex. F-23, F-27). On July 31, Frances Grinstead provided an "update on the fogger patent," disclosing that Eco-Evolutions' lawyer had advised "we have a very strong case to patent the mechanisms, sequence of mechanisms, as well as the exterior and electronics." (*Id.*, Ex. F-28). The following month, after reviewing the Curis fogger, Maryalice St. Clair wrote that her original understanding had been that Eco-Evolutions was developing a "low-priced sprayer device for the mold and remediation market," but that instead, Eco-Evolutions had developed "a fogging device by, in part, reverse-engineering the HaloFogger." (*Id.*, Ex. F-30). She asked whether Eco-Evolutions would continue

2

to purchase "HaloSpray" and what the company's marketing strategy for the Curis fogger would be. (*Id.*).

On April 7, 2016, Eco-Evolutions terminated the Reseller Agreement. (*Id.*, Ex. F-36). Halosil filed this action on September 5, 2018. (D.I. 1).

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III.   DISCUSSION

### A.  Statute of Limitations

Delaware law governs this contract. (Agreement at Section 16). Delaware has a three-year statute of limitations for actions based on breach of contract. 10 Del. C. § 8106. The statute "begins to run when the contract is breached." *Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1128 (3d Cir. 1990). "Breach is defined as a failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 77 (Del. Ch. 2013) (cleaned up). "However, the statute of limitations may be tolled . . . where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Estate of Buonamici v. Morici* 2010 WL 2185966, at *3 (Del. Super. Ct. June 1, 2010) (cleaned up). Under this exception, called the "Time of Discovery Rule," the statute of limitations begins to run upon "discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Id.* (cleaned up).

4

Plaintiffs filed this action on September 5, 2018, so it is time-barred if the statute of limitations began to run before September 5, 2015. Plaintiffs argue the breach occurred, at the earliest, when Eco-Evolutions terminated the Reseller Agreement on April 7, 2016. "To determine the accrual date, . . . courts must examine the language of the contract." *Meso Scale Diagnostics*, 62 A.3d at 77. In this case, the contract provides that Sanosil is the "sole and exclusive owner of all rights" in Eco-Evolutions' "Developments" during the period of the agreement. Thus, under Plaintiffs' theory, if Defendants breached the contract, it was when they acted as the owners of the Curis fogger.

Steven Grinstead acted as the owner of the Curis fogger when he filed a provisional patent application for the invention on February 13, 2015. (D.I. 80-10, Ex. 10). The application lists Steven Grinstead alone as the inventor and applicant. (*Id.*). It does not assign the invention to anyone else. If, as Plaintiffs argue, the Curis fogger was a "Development" under the contract, then the provisional patent application constituted a breach. Patent applications, however, are initially confidential, so Defendants could not be expected to know of the application just because it was filed. The statute of limitations does not begin to run if "the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Estate of Buonamici,* 2010 WL 2185966, at *3.

Sanosil was not "blamelessly ignorant" though, because Frances Grinstead mentioned on February 8, 2015 that a "new remediation fogger . . . has been patented."(D.I. 75-6, Ex F-11). At that point, Sanosil had discovered facts "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts [constituting the basis of the cause of action]." *Estate of Buonamici*, 2010 WL 2185966, at *3. In other words, Sanosil had enough information that it should have investigated whether Eco-Evolutions had

5

breached or was about to breach the contract. The St. Clairs could have simply asked if the patent was (or would be) assigned to Sanosil.

Instead, both the St. Clairs and the Grinsteads appeared to act under the assumption that the Curis fogger belonged to the Grinsteads. The St. Clairs referred to the Curis fogger as "her," "your," or "Eco-Evolution's" fogger, and they expressed interest in "reselling" it. (D.I. 76-7, Exs. F-12, 15, 26, 31, 32). If Sanosil owned the fogger, it would have been "selling" it, not "reselling" it. The St. Clairs may have assumed there would be an ongoing business relationship between Sanosil and Eco-Evolutions, but both parties acted as though the Grinsteads owned the Curis fogger. Thus, the statute of limitations on the breach of contract claim began to run in February 2015. Frances Grinstead discussed the patent prosecution process in more detail in a subsequent email on July 31, 2015. (*Id.*, Ex. F-28). Even if the February email were not enough to prompt further investigation, the July email should have been. Either date would mean the statute of limitations had run for more than three years by the time of the filing of this action. The breach of contract claim is therefore time-barred.

### B.  False Advertising

Plaintiffs also allege Defendants are liable under Section 43(a) of the Lanham Act, which prohibits false or misleading advertisements about a product. 15 U.S.C. § 1125. Plaintiffs argue Defendants' statements were literally false. Under this theory, Plaintiffs do not need to show that the buying public was actually misled. *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) "In deciding whether an advertising claim is literally false, a court must decide first whether the claim conveys an unambiguous message and second whether that unambiguous message is false." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). "A 'literally false'

6

message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. Regardless, only an *unambiguous* message can be literally false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586-7 (3d Cir. 2002) (cleaned up).

Plaintiffs allege Defendants made at least two false statements in a promotional brochure for their fogger. First, the brochure states, "Only CURIS System inactivates the protective soil load to kill 99.9999% (six log reduction) of the c.diff spore achieving sterilization." (D.I. 84-1 at 45). This statement appears in a page of the brochure with the heading, "The Only System Validated to Kill c.diff in a 3 Part Soil Load." (*Id.*). Second, a chart in the brochure compares capabilities of the Curis fogger with the capabilities of its competitors. (*Id.* at 44). One row of the chart is labeled, "Validated to Kills [sic] c. diff spores in 3 part soil load biofilm." (*Id.*). The Curis fogger has a check under it, but the Halosil fogger has an x. (*Id.*).

Plaintiffs first argue these statements are literally false because the Environmental Protection Agency (EPA) did not validate the Curis fogger for these capabilities. These statements, however, do not mention the EPA. They only claim the system was "validated" to kill certain spores. Defendants point to testing by a third-party company, Michrochem Laboratory, as evidence that their product was "validated." (D.I. 94-1, Ex. A). Plaintiffs do not contest this evidence. Rather, they argue the "necessary implication" of the brochure is that the EPA validated the claims. (D.I. 82 at 11). But there is nothing about the context of these claims that would create such an implication. The brochure does not mention any federal agency or regulatory approval. Thus, no reasonable jury could conclude Defendants falsely advertised that their own product had been validated by the EPA.

Plaintiffs' second argument is that the statements are literally false because of what they imply about Plaintiffs' product. Specifically, Plaintiffs argue the brochure falsely suggests the Halosil fogger is not validated to kill 99.9999% of c. diff spores in a three-part soil load. That is the clear implication of Defendants' statements. The x on the chart indicates that the Halosil fogger is not validated to be that effective, and the statement that "only" the Curis fogger is validated to kill that percentage of spores in that soil implies the Halosil fogger (and all other foggers) are not. Plaintiffs point to an EPA registration, which indicates that their Halosil system "Kills [eliminates] 99.9999% of [Clostridium difficile] [C-diff] spores." (D.I. 84-1 at 4).

The EPA document, however, does not specify whether the Halosil product was tested in a "3 part soil load." The record contains little evidence on what exactly a "3 part soil load" is. Is it especially difficult to kill spores in that environment? Possibly, but I am left only to speculate. In any event, I conclude Defendants' statements are not "literally false." The chart indicates that the Halosil fogger is not validated to kill "c. diff spores in 3 part soil load biofilm." Plaintiffs' EPA registration does not literally contradict this claim because the registration says nothing about "3 part soil." The other statement identified by Plaintiffs explicitly mentions only a "protective soil load," not a "3 part soil" load. Again, the record provides little guidance on what a "protective soil load" is. The heading of that page of the brochure, however, specifically mentions "3 part soil," so the challenged statement, read in context, seems to be about "3 part soil." Regardless, Plaintiffs' EPA registration says nothing about "protective soil" or any "soil" at all, so neither statement is "literally false."

Plaintiffs argue that their EPA registration means they "can make the claim that their system can kill 99.9999% of C. diff spores *anywhere* without qualification." (D.I. 108 at 6). That may be so. It does not mean though that their product was "validated" to kill spores in a three-

8

part soil load. Plaintiffs' product may even be just as effective as Defendants' product at killing

spores in soil. Plaintiffs have not shown though that their product was "validated" for that

capability. Defendants' statements are therefore not literally false.

In their reply brief in support of their partial summary judgment motion, Plaintiffs

identify an additional statement in Defendants' brochure:

> **Spore Sterilization**: This means CURIS delivers the proper amount of solution
> over the right amount of time to the treatment area, producing reliable results
> validated to achieve a 99.9999% (6 log) reduction.

(D.I. 108 at 6, citing D.I. 84-1 at 41, 47, 54). Plaintiffs note that this statement, unlike the

others, does not mention soil at all. The statement also, however, does not mention

anything about Plaintiffs' product, nor does it assert that the Curis fogger is the only

fogger that is validated to be that effective. The testing by Michrochem Laboratory

indicates that the Curis fogger is "validated to achieve a 99.9999% (6 log) reduction" in

spores. *See* D.I. 94-1, Ex. A at 10).    Thus, this statement is not literally false either.

Section 43(a) of the Lanham Act prohibits not only literally false statements, but also

misleading statements. If a statement is not literally false though, a plaintiff must prove five

elements:

> (1) that the defendant has made false or misleading statements as to his own
> product or another's; (2) that there is actual deception or at least a tendency to
> deceive a substantial portion of the intended audience; (3) that the deception is
> material in that it is likely to influence purchasing decisions; (4) that the
> advertised goods traveled in interstate commerce; and (5) that there is a likelihood
> of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Novartis Consumer Health*, 290 F.3d at 590. Plaintiffs have not produced any of this kind of

evidence. They have only argued the claims were literally false. There is therefore no genuine

dispute of material fact on the false advertising claim.

9

## IV.    CONCLUSION

For these reasons, Defendants' motion for summary judgment is GRANTED. Plaintiffs'

motions for summary judgment are DENIED. Defendants' motion to limit the testimony of

Plaintiffs' expert (D.I. 76) is DISMISSED as moot.

I will enter an Order consistent with this Memorandum Opinion.